UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALLAS BUYERS CLUB, LLC,

                              Plaintiff,                   Case No.:  14-12600

-vs-

                                                          Honorable Linda V. Parker

DOES 1-21,

                              Defendants.
_____/

**JOHN DOE NUMBER 7'S BRIEF IN SUPPORT OF
MOTION TO DISMISS JOHN DOE NUMBER 7 FROM CASE AND QUASH
THE SUBPOENA**

NOW COMES John Doe Number 7, by and through counsel, and for this Brief, states unto this Honorable Court as follows:

**I.    Introduction and Requested Relief.**

John Doe Number 7 is requesting to be dismissed from this case for improper joinder and cites to two recent decisions for support of this request.  The rulings are:

1. *Patrick Collins, Inc. v. John Does 1-23*; Eastern District of Michigan; Case No. 2:11-cv-15231-GCS-RSW; Order Granting Motion to Quash in Part and Severing DOE Defendants 2-3;; Dated: 3/26/12; Docket No. 8; pages 2-3. (See Exhibit A)

And

2. *Dallas Buyers Club, LLC, v. Unkown Parties named John Does 1-25,* Westerb District of Michigan; Case No. 1:14-cv-00455-RJJ; Order dated 06/06/14, Docket No. 11 (Exhibit B).

The case alleges a series of a copyright infringements against 21 John Doe defendants, identified in the Complaint only by their "I.P." address or "Internet Protocal" address (i.e. an address of a particular computer). The Defendants are alleged to have downloaded a digital copy of a copyrighted film entitled "DALLAS BUYERS CLUB," (hereinafter "the Work") by way of a "BitTorrent" file-sharing program. Bittorent programs are discussed in more detailed herein, but, in essence, are programs that allow digital files to be shared between a series of internet users, from any location that an internet connection can be sustained.

Since the filing, the Court has authorized the issuance of discovery subpoenas to determine the name, address, and telephone number of the owner's of the I.P. address in question. The instant motion is filed on behalf of John Doe No. 7, who respectfully requests that the subpoena be quashed and that John Doe number 7 be dismissed from the case for being improperly joined.

**II.      Factual Summary, Procedural History, and Background Information.**

   **a.      What is a BitTorrent?**

A BitTorrent protocol, or program, is a decentralized method of distributing digital computer files. Instead of relying on a central server to distribute data directly to individual users (from one user to another without the assistance of others), the BitTorrent or protocol allows individual users to distribute data among themselves (potentially to and from many different users at any given time). The BitTorrent involves breaking a single large file into many small pieces, which can be transferred more efficiently than if it were a single large file and in turn, can potentially redistributed by any particular downloader. Each peer can download missing pieces of the file from

multiple sources. After downloading a piece, a peer automatically becomes a source for the downloaded piece (but being a source does automatically connote that the file is in fact uploaded to others). This distribution method contrasts sharply with a one-to-one whole file transfer method.[1]

In BitTorrent vernacular, individual downloaders/distributors of a particular file are called peers. The group of peers involved in the downloading/distributing a particular file is called a swarm. A server which stores a list of peers in a swarm is called a tracker; the tracker also acts to assist users in finding a particular torrent. A computer program that implements the BitTorrent protocol is often called a BitTorrent client.

The BitTorrent protocol operates as follows: First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to other peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

It is important to note that any individual connected to the swarm is free to

---

[1] For a detailed discussion of BitTorrent programs (or "Protocals"), see:

*Patrick Collins, Inc. v. John Does 1-23*; Eastern District of Michigan; Case No. 2:11-cv-15231-GCS-RSW; Order Granting Motion to Quash in Part and Severing DOE Defendants 2-3;; Dated: 3/26/12; Docket No. 8; pages 2-3. (See Exhibit A).
.

disconnect its computer there from at anytime. Thus, if a download is completed a party need not stay connected to the internet and continue to upload the file. Further, if power is lost or an internet connection is terminated, the user connected to a BitTorrent program will automatically be disconnected. BitTorrent files are not downloaded or uploaded instantaneously. As with any download or upload, the file transfer requires time.

Practically speaking, what does this all mean? Perhaps a computer user desires to download a copy of "The Huntchback of Notre Dame," which entered the public domain at some point in on or around 1951. The user can visit a website that hosts and along users search for "torrents," which are essentially divided by particular files (or works) or collections of files.

> **b.** **BitTorrent Cases at a Glance (Background as to Nationwide Concerns).**

Cases like the instant one are becoming all too common in federal courts across the country. The cases commence with allegations of copyright infringement against a series of John Doe Defendants. The complaints then allege that the John Does downloaded the protected work through a BitTorrent program and that the infringers I.P. address has been logged during the course of that infringement. A subpoena is then issued to an internet service provider ("I.S.P." herein) prior to the Rule 26(f) conference to determine the identity of the owner of the I.P. address. One would think that the next logical step would be for the Plaintiff to amend its complaint to name the Defendants and serve them with process. Instead, these proceedings turn into routine collection actions whereby the John Does are coerced into settling the claims by collection calls and threatening letters. The parties are then given an ultimatum: pay up, or have your name

associated with a public lawsuit involving the downloading of a copyrighted film.

Even though in many cases legitimate defenses may exist to the allegations, many fear the possible ramifications of such a public record and simply choose to pay collectors and move on.  A Plaintiff's actual interest in litigating the claims closely resemble that of the parties being sued.  This practice translates into quick cash made from the institution of fear and humiliation in its victims.  The practice has not been looked upon favorably throughout the country, and has been met with striking criticism in this very court.  These criticisms seem to stem from the actual subpoena issuance to the method by which Defendants are joined in these types of cases.

      c.     **Facts and Procedural History.**

The case was filed on July 2, 2013. (See Complaint; Docket No. 1).  The Complaint alleges that that series of Defendants acted in concert to illegally download the Work in question.

The 21 Defendants are listed only as "John Doe" number 1-21.  The Defendants are identified only by an Internet Protocol address ("I.P." address herein). (*See* Complaint Exhibit; Docket No. 1-1).  The complaint's attachment also details a "hit date" on which each Doe Defendant was alleged tracked downloading the Work in question.  These dates range from February 14, 2014, through March 2, 2014, and are archived by the exact time a user is alleged to have been connected to the swarm, in time intervals of one minute. (*See* Complaint Exhibit; Docket No. 1-1).

On July 11, 2014, the Plaintiff filed a motion to enable it to perform discovery, by way of subpoena issuance, prior the required Rule 26(f) conference.  The purpose of said subpoenas is to determine the names, physical addresses, and phone numbers of the

parties that own the I.P. addresses detailed in the Complaint. (See Motion; Docket No. 2). On August 4, 2014, the Court entered an Order permitting the issuance of said subpoenas.

### III. Law and Argument.

#### a. Improper Joinder.

Joinder of Defendants is governed by Federal Rule of Civil Procedure 20(a)(2), which allows the joinder of defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Participation in a BitTorrent swarm at any given time does not constitute being involved in the same transaction or occurrence with the other swarm members. Other Judges of this Court came to the same conclusion. In analyzing whether Defendants who used BitTorrent technology were properly joined as Defendants in a copyright infringement lawsuit, Judge Steeh (Exhibit A) writes:

> Based on a review of the complaint, motions and briefing filed in the instant action, and the decisions analyzing whether joinder of unnamed Doe defendants utilizing BitTorrent technology in one action is permitted under Rule 20(a), the court concludes that simply alleging the use of BitTorrent technology, like earlier P2P file sharing protocols, does not comport with the requirements under Rule 20(a) for permissive joinder. Here, the alleged activity involves 23 different defendants, 4 different ISPs, and nearly three months of activity (7/15/2011 through 10/11/2011). This is insufficient to establish that the Doe defendants were involved in the same transaction or series of transactions.

> In the instant matter, the allegations reveal that each of the computers using the IP addresses (identified in Exhibit A to the complaint) connected to the investigative server in order to download a piece of the Work, identified by the hash value of 8F7C963137369FA874A32E468C1D432DAF0B859. Each of the IP addresses connected to the investigative server at different times and dates to download a piece of the Work and there is no allegation that any of the computers associated with the IP addresses downloaded or uploaded pieces of the Work with each other. That plaintiff has provided evidence that each of the defendants connected to the investigative server to download a piece of the Work does not show that each of the IP addresses acted in concert with all the other addresses in the swarm. The nearly three month time span covering this activity suggests the likely possibility that there was never common activity linking the 23 addresses in this matter. See Hard Drive Prods., Inc. v. Does 1-188, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011); K-Beech, Inc. v. John Does 1-41, No. V-11-46, 2012 U.S. Dist. LEXIS 31803, *10 (S.D. Tex. March 8, 2012) ("While [plaintiff] provides the precise date, hour, minute and second at which it alleges that each Doe Defendant was observed to be sharing the torrent of the copyrighted work, [plaintiff] does not indicate how long each Doe Defendant was in the swarm or if any of the Doe Defendants were part of the swarm contemporaneously.")
>
> *Patrick Collins, Inc. v. John Does 1-23*; Eastern District of Michigan; Case No. 2:11-cv-15231-GCS-RSW; Order Granting Motion to Quash in Part and Severing DOE Defendants 2-3;; Dated: 3/26/12; Docket No. 8; pages 2-3. (Exhibit A).

The same facts appear to be at issue in the instant lawsuit as were addressed in *Patrick Collins'* suit in front of Judge Steeh. The attachment to the Complaint is a list of I.P. addresses that are alleged to have downloaded at least a portion of the work in question without the copyright holder's permission. If this allegation is taken as true, it would be the only thing that these individuals have in common.

The attachment does not appear to contain a single instance where any of the Defendants were logged onto the swarm at the same time. Rather, they appear to be randomly accessing the swarm at different times of the day, over the course of

7

approximately two months. The Defendants are located in different geographical areas, use different I.S.P.'s, likely use different types of BitTorrent software, and in all probability, have never met and will never speak to each other or otherwise meet one another in person or otherwise.

There are also no allegations that any portion of the Work was directly transferred from one Defendant to another. Again, timing, in this respect, is everything. If the parties were never online at the same time, they could have never transferred files to each other. If nothing was shared between the Defendants, how can they be said to have been engaging in the same transaction or occurrence?

United States District Court Judge Robert J. Jonker in his ruling attached as Exhibit B hereto does an analysis regarding this joinder issue regarding this very same Plaintiff just a few months ago. Judge Jonker's opinion references the history and mixed results of this joinder issue. The Court is asked to consider Judge Jonker's ruling here, because it involves the exact same Plaintiff and factual background and concludes that suing 21 Defendants in this context is improper joinder.

It only makes sense to dismiss John Doe Number 7 from this case due to John Doe Number 7 being improperly joined to the case.

      **b.**    **Quash Subpoena.**

Discovery in this case is nothing more than a fishing expedition. The discovery subpoena was directed to the I.S.P. to determine the owner of the I.P. address in question. This begs the question of who owns an I.P. address? The owners of the I.P. address would logically be those who subscribe to internet services through the I.S.P. and of course, pay the bill. This type of discovery looks past the fact that numerous different

8

parties (knowingly or unknowingly) could access the internet through this internet connection at any given time.  For instance, a teenager could download movies without a parent's knowledge or consent.   Thus, the finger is always pointed at the bill payer, whether or not he/she has ever heard the term "BitTorrent."

Other Courts have met this practice with the same criticism.  For example, in the case of: *VPR Internationale vs. Does 1-1017*, Case No. 2:2011cv02068; Northern District of Illinois, Order Denying Motion for Expedited Discovery; Docket No. *,* the Court states that:

> In this novel case, which has turned Fed. R. Civ. P. 23 on its head, an identified existing entity, acting as a plaintiff, seeks to sue a class of unnamed individuals, denominated only as Does 1 through 1017. There has been no service of process yet because, obviously, there is no identified "person" to serve within the meaning of Fed. R. Civ. P. 4. So at this point the court has no personal jurisdiction over anyone. The Does, perhaps, are subscribers who have an internet service address. All that identifies the Does are multi-digit internet subscriber addresses.
>
> There is nothing to lead the court to believe that expedited discovery is necessary in the case. There is no basis to believe that information will be lost or evidence destroyed that would justify expedited discovery that is not conducted in an adversarial procedure.
>
> Certainly there are existing, identified entities who could be named as defendants that have control over or know the identity of a particular internet service address customer. Their being named in the suit would give the court an entity upon whom process could possibly be served and provide personal jurisdiction over identified parties to the suit. The identified, existing defendant over whom the court had personal jurisdiction could then participate in an adversarial proceeding where questions or claims of privilege or protection could be raised. *See* Fed. R. Civ. P. 45(d)(2).
>
> Plainly stated, the court is concerned that the expedited ex parte discovery is a fishing expedition by means of a perversion of the purpose and intent of Fed. R. Civ. P. 23 .

The logic of the Order entered in the *VPR Internationale* case makes sense.  Who

are these John Does and how can it be said with any semblance of certainty that they are the party responsible for the alleged infringement? Fishing expeditions in discovery should not be tolerated, particularly before any party has had the opportunity to object to the issuance of the same.

The Federal Rules of Civil Procedure discuss when a subpoena must and may be quashed by the Court. Under Rule 45(c)(3), this court must modify or quash a subpoena that: (1) fails to allow a reasonable time to comply, (2) requires a non-party to travel more than 100 miles from where that person resides, is employed, or regularly transacts business, (3) requires disclosure of privileged or other protected matter that is not subject to an exception or waiver, or (4) subjects a person to undue burden. See Fed. R. Civ. P. 45(c)(3)(A).

A court may modify or quash a subpoena if it requires disclosure of (1) confidential information, (2) an unretained expert's opinion or (3) requires a non party to incur substantial expense to travel more than 100 miles to attend trial. See Fed. R. Civ. P. 45(c)(3)(B).

In the matter at hand, the disclosure of this type of information is confidential in nature. While the subpoena itself requests only the name, address, and telephone number of a particular John Doe, the context of the request is what triggers the confidentiality. The lawsuit itself creates a lasting stigma based on the fact that his/her name will be forever associated with the downloading of this Work. The online nature of court documents filed via the ECF system has essentially taken public documents, and made them far more public then ever before. This is particularly true in light of the fact that search engines such as Google, easily locate Court documents hosted by sites that

'piggyback' many documents filed via PACER or simply allow access to different federal filings online.² Effectively, suits like this transform those with legitimate defenses to the case into immediate losers. Given the nature of the allegations and the lasting ramifications associated with this suit in general, John Doe Number 7 believes that he is entitled to confidentiality in his affairs and as such, the subpoena should be quashed.

      **d.**      **John Doe Appearances and Continuing to Proceed as John Doe.**

Given the sensitive nature of the Work in question and the sensitive nature of this lawsuit in general, Defendant has chosen to attempt to appear anonymously for the purposes of this motion. This Court has previously permitted parties to proceed anonymously in these types of cases. See *Patrick Collins, Inc. v. John Does 1-23*; Eastern District of Michigan; Case No. 2:11-cv-15231-GCS-RSW. Such a request would not act to prejudice the Plaintiff at this point in time.

To the extent that the Court chooses not to grant John Doe Number 7's motion to quash the subpoena, it would seem that a fair balance in the case would be to continue to allow him to proceed in the matter as "John Doe Number 7". This request would not prejudice any party, would allow him to continue to defend the matter and likewise, permit the Plaintiff to prosecute the matter. In the interim, it would certainly reduce the stigma concerns addressed above as well.

WHEREFORE John Doe Number 7 respectfully requests that this Honorable Court dismiss John Doe Number 7 from this action as being improperly joined to this action.

---

² For example, *see*: http://research.lawyers.com/blogs/archives/22473-Doe-41s-motion-to-quash,-sever-dismiss-granted-in-Patrick-Collins-Inc-v-Does-1-45.html

Dated: September 17, 2014             /s/ Nik Lulgjuraj
                                      Nik Lulgjuraj (P48879)
                                      Attorney for Doe Number 7
                                      300 N. Main, Suite 4
                                      Chelsea, MI  48118
                                      (734) 433-0816
                                      Fax: (734) 433-0817
                                      Email: nik@niklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2014, I electronically filed

### JOHN DOE NUMBER 7'S BRIEF IN SUPPORT OF
### MOTION TO DISMISS JOHN DOE NUMBER 7 FROM CASE AND QUASH THE SUBPOENA

filed with the Clerk of the Court using the ECF system, which will send notification to all participants on this case.

Dated: September 17, 2014        /s/ Nik Lulgjuraj_____
                                 Nik Lulgjuraj (P48879)
                                 Attorney for Doe Number 7
                                 300 N. Main, Suite 4
                                 Chelsea, MI  48118
                                 (734) 433-0816
                                 Fax: (734) 433-0817
                                 Email: nik@niklaw.com

14